RESERVE NATURAL GAS CO. OF LOUISIANA, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 8704, 9006.    Promulgated May 29, 1928.

*James S. Y. Ivins, Esq.*, for the petitioner.
*Granville S. Borden, Esq.*, for the respondent.

228

OPINION.

MILLIKEN : The respondent determined the deficiencies here in question by allowing a value of $330,000 for the contract, for both invested capital and exhaustion purposes. The petition as filed seeks a value of $1,200,000. At the hearing the respondent took the position that he erred in allowing any value for the contract and the petitioner took the position that the contract had a value of $2,400,000. Thus, the parties, as a result of the hearing, find themselves further apart. In the original value determined and claimed, both parties employed the same method, i. e., by the determination of the present worth of future estimated profits. They differed as to the estimated annual net profits and the amount of discount by which such profits should be reduced in the redetermination of their present worth. Petitioner, in support of the valuation claimed, also offered the testimony of expert witnesses. We are convinced that both parties, as concerns their present contentions, have gone to extremes. The respondent contends that the contract in question had no value because it was acquired by parties dealing at arm's length with the three gas companies and, since it appears that no bonus was paid by the individuals, the acquisition of the contract without cost is evidence of the fact that it had no bonus value.

Assuming that the individuals were dealing at arm's length with the gas companies and acquired the contract without cost, yet the

contract may have had a substantial value, and the petitioner would be entitled to such value when it acquired the contract for stock. The question at issue is the value of the contract and the transaction by which the individual acquired it would be only one element of proof which might be rebutted by more competent evidence of value. It is not of uncommon occurrence for leases and contracts to be acquired at no cost and be sold to a third party for substantial amounts. We do not believe, however, that the transaction in question was at arm's length, since it appears from the record that all of the companies or their stockholders either participated directly or had the opportunity to participate in proportion to their stock interests. The officers of the three corporations participated as trustees or agents.

The respondent further contends that in any event the value of the contract should be confined to the enforceable provisions contained in it. While in many cases this might be true, in the instant case there are circumstances which overcome that presumption. In the first place, the creation of the petitioner was necessary to the successful operation of the three gas companies which obligated themselves to take a certain quantity each year. Two of the companies furnished 89 per cent of the market, and the other company was to furnish 60 per cent of the supply. For any one of these companies to start competition with the pipe line company it would have to increase either its market or its supply, the condition which the creation of the petitioner remedied. The companies were obligated to take a definite quantity each year from the petitioner, so that the competition could only be for the excess over that amount. Until a point was reached where such excess was sufficient to warrant the installation of another pipe line, none of the gas companies or a third party would be justified in entering the competitive field. Such a point would not be reached until the market had increased at least 50 to 75 per cent. Also it is not reasonable to assume that the three companies would enter into competition with petitioner and thus render of questionable value the investment of $600,000 in the pipe line constructed by them for petitioner.

The purchaser of the contract acquired two elements of value—first, by the terms of the contract it had an assured return, enforceable under the contract, of $2\frac{1}{2}$ cents a thousand from the purchase and sale of 6,750,000,000 feet of gas a year during 20 years. Second, in addition to the assured and enforceable business, it acquired a business relationship and strategical position that would practically assure it of handling any additional business of the three gas companies. The latter was the prime factor in the organization of petitioner.

This second element would of course extend beyond the life of the contract, but during the life of the contract it was inseparable therefrom and would have passed with the contract to a purchaser thereof. This element also was susceptible of valuation and a prospective purchaser would have been called upon to pay therefor an amount representing its fair value.

The contract had a life of 20 years and, in determining the value of the contract to a prospective purchaser, we can only consider the two elements of value for a period of 20 years. Any value beyond that period could not be a part and parcel of the contract, although growing out of it and resulting from it.

An analogous condition results in the case of patents. The patent has a limited life of 17 years, but after the 17 years have expired the company which has utilized the patent may continue to realize gains or profits from the manufacture or use of the patented article.

The petitioner's witness, who was experienced in the gas industry, stated that at the time of the formation of the petitioner, the parties were convinced both from their experience and investigation that domestic consumption would increase 100 per cent in 20 years, and further stated, "As to the industrial, of course that was something of a guess, but we had statistics and the history to show us what the domestic would be." This witness and another witness also expressed the opinion that within 20 years from the date of the contract it would not be unreasonable to expect the operations of the petitioner would have reached the capacity of the pipe line, or about 60,000,000 feet per 24 hours.

In view of these conditions, we believe that a willing purchaser would have been justified in considering that the average assured market for the 20 years would be at least 9,855,000 feet a day, or 50 per cent in excess of the minimum guarantee. This would represent assured gross receipts of $246,375 a year and net receipts of about $150,000 a year after deducting operating expenses, depreciation, and all other annual charges, except interest on the investment, which a prospective purchaser would make.

The value of this annual earning after making allowance for interest on the investment in pipe line and other equipment would reasonably amount to $1,200,000, the value originally claimed in the petition. We have used the operating expenses and other annual charges that the parties used as a basis for their original valuations.

We are, therefore, of the opinion that the value of the contract in September, 1914, acquired for stock, was $1,200,000, which value should be allowed for invested capital and used for exhaustion purposes.

*Judgment will be entered under Rule 50.*